UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PATRICIA R. GALVAN, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:12-cv-01135-GMN-GWH |
| vs. ) | |
| ) | **ORDER** |
| DEL TACO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is the Motion for Summary Judgment (ECF No. 92) filed by Defendant Del Taco ("Defendant") on November 24, 2014.  Plaintiff Patricia R. Galvan ("Plaintiff"), proceeding *pro se*, has file a Response in Opposition (ECF No. 95) and Defendant has filed a Reply (ECF No. 99).[1]  Defendant also filed an Objection (ECF No. 100) asserting that the material provided by Plaintiff in her Response was procedurally deficient and not admissible evidence.  Plaintiff subsequently filed a Response (ECF No. 105) to the Objection.

**I.      BACKGROUND**

According to her Complaint, Plaintiff is a former employee at one of Defendant's restaurants. (Complaint at 4, ECF No. 4).  Plaintiff alleges that in April, May, and June of 2008, she was verbally abused and sexually harassed by her store manager, Carlos Guiliani ("Mr. Guiliani"). (*Id.*).  Specifically, Plaintiff alleges that Mr. Guiliani would call her and other female employees "Mexican pigs" and "bitches" and would make inappropriate comments about the private areas of the female employees' bodies. (*Id.* at 4, 17–19).

---

[1] Plaintiff has also filed a one-page "Motion to Dismiss Defendant's Del Taco's Allegations" (ECF No. 96), in which she makes unsubstantiated accusations that Defendant has lied and manipulated documents, including her deposition transcript.  This filing, however, is not a proper motion under the Federal Rules of Civil Procedure or the Local Rules of the District of Nevada and appears to be baseless.  Moreover, Plaintiff has failed to comply with Local Rule 7-2(d) by filing points and authorities in support of her motion, which constitutes consent to deny the motion.  Accordingly, Plaintiff's Motion to Dismiss Allegations is **DENIED**.

Plaintiff further alleges that when she complained about Mr. Guiliani's behavior to district manager Teresa Wilson ("Ms. Wilson"), no corrective action was taken. (*Id.* at 4). Then, approximately a month after reporting the harassment, Plaintiff was transferred to a different restaurant location that was far away from her residence. (*Id.* at 4–5). However, after working for only a few weeks at the new location, Plaintiff's employment with Defendant was terminated without explanation by Sabina Tobogacz ("Ms. Tobogacz"), the manager of the new location. (*Id.* at 5).

Plaintiff subsequently filed a charge of employment discrimination with the Nevada Equal Rights Commission (the "NERC"), which determined that "probable cause supports [Plaintiff's] charge of sexual harassment and retaliation." (NERC Determination, Complaint at 11–13, ECF No. 4). Following the NERC determination, Plaintiff filed her Complaint before this Court on December 4, 2012, alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964. (Complaint at 1–2, ECF No. 4).

At calendar call on October 14, 2014, Plaintiff failed to appear, so the Court vacated the trial date and set a show cause hearing for October 23, 2014. (10/14/2014 Minutes, ECF No. 90). At the show cause hearing, Plaintiff appeared and the Court set a new trial date and extended the time to file dispositive motions. (10/23/2014 Minutes, ECF No. 91). The Court also referred Plaintiff to the Legal Aid Center of Southern Nevada and advised that she obtain counsel, which she has failed to do. (*Id.*).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  DISCUSSION

In its motion, Defendant asserts that it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff has failed to make a showing of sufficient evidence to establish the existence of at least one element of her claim and Plaintiff has failed to show that Defendant's offered reasons for the adverse employment actions were pretexts. (MSJ 4:15–8:4, ECF No. 92). Similarly, Defendant argues it is entitled to summary judgment on Plaintiff's sexual harassment claim because Plaintiff has failed to make a showing of sufficient evidence to establish the existence of at least one element of her claim and Defendant has shown that it is entitled to directed verdict on a reasonable care defense. (*Id.* 8:5–11:15). For the reasons discussed below, the Court finds that Defendant is entitled to summary judgment regarding the retaliation claim but not the harassment claim.

### A. Plaintiff's Supporting Documents

As an initial matter, the Court notes that in her Response, Plaintiff presents five

documents as evidence to support her claims against Defendant's motion.  These five documents are: (1) a notarized statement from Plaintiff, (Pl.'s Statement at 2–4, ECF No. 95), (2) a notarized statement from Plaintiff's daughter, (Daughter's Statement at 5–6, ECF No. 95), (3) a Progress Action Report relating to Plaintiff missing work four days after moving to the second restaurant location, (Progress Action Report at 11, ECF No. 95), (4) a paystub dated June 24, 2008, (Paystub at 12, ECF No. 95), and (5) Plaintiff's discrimination charge that was filed with the NERC, (NERC Charge at 15–16, ECF No. 95).  Of these documents, only the notarized statements and the discrimination charge contain factual support for Plaintiff's claims.  However, the notarized statements are not sworn under penalty of perjury and are not suitable as evidence for summary judgment purposes. *See Jissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306-07 (5th Cir. 1988) (holding that a technically deficient affidavit submitted in opposition to summary judgment "must be disregarded as summary judgment proof" because it was not sworn under penalty of perjury and the declarant did not declare her statements to be true and correct); *Flowers v. Abex Corp.*, 580 F. Supp. 1230, 1233 n.2 (N.D. Ill. 1984 (stating that merely notarizing the signature does not transform a document into affidavit that may be used for summary judgment purposes); *see also United States v. Jaramillo*, 69 F.3d 388, 391–92 (9th Cir. 1995) (stating that a notarized witness statement is not made under oath). Additionally, both statements are full of hearsay assertions which are not entitled to weight as evidence at summary judgment. *Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (9th Cir. 1997) ("[H]earsay evidence in Rule 56 affidavits is entitled to no weight."); *see, e.g.*, (Pl.'s Statement at 2, ECF No. 95) ("I preceded to call Human Resources and spoke with Georgina . . . . I placed Yadira Cervantez on the phone to speak with Georgina and she confirmed that [Mr. Guiliani] was demanding I leave for no apparent reason.").  Moreover, the statement by Plaintiff's daughter primarily contains information that is irrelevant to Plaintiff's claims except for two vague statements that "[she] witnessed firsthand the type of verbal abuse [Plaintiff] had

to endure from Mr. Guilianni" and "[she] felt very uncomfortable hearing about women's private areas as he would yell stuff about them to his employees." (Daughter's Statement at 5, ECF No. 95). Accordingly, the only proper evidence that Plaintiff has submitted supporting her claims appears to be her NERC discrimination charge, which was declared under penalty of perjury.

### B. Retaliation Claim

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) that a causal nexus exists between the protected conduct and the adverse action. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). If a plaintiff successfully establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate reason for the employment action. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1075 (9th Cir. 2003), *as amended* (Jan. 6, 2004). If the defendant articulates such a reason, the burden of production then shifts back to the plaintiff to prove that defendant's "articulated reason is a pretext for illegal retaliation, with pretext shown 'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1980)).

Here, Plaintiff has failed to present evidence showing that a causal nexus existed between her protected conduct and the adverse action or that Defendant's reason for the alleged retaliation is a pretext. Liberally construing Plaintiff's filings, she contends that because she reported Mr. Guiliani's harassment of her to Ms. Wilson, Defendant first moved her to an undesirable location and then fired her. (Complaint at 4–5, ECF No. 4); (Resp. at 7, ECF No. 95). Plaintiff asserts that her protected conduct was speaking to Ms. Wilson and that the adverse employment action was either her transfer to an undesirable store or her termination.

(Resp. at 7, ECF No. 95).  Plaintiff, however, offers nothing to show a causal connection between her protected conduct and either adverse employment action other than conclusory, unsupported statements that she reported harassment and was then fired.[2] *See* (*Id.*) ("3. Nexus between protected activity and adverse employment action.  I talked to [Ms. Wilson] and then Georgina from Human Resources and [then] they fired me . . . ."); (NERC Charge at 16, ECF No. 95) ("It is my contention that the reason for the layoff was pretext and I was subjected to retaliation because I complained about the discriminatory treatment by [Mr. Guiliani].").  These conclusory, unsupported, and self-serving statements, however, are insufficient for Plaintiff to meet her burden of showing a causal connection. *See Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895 (1st Cir. 1988) (Even in retaliation cases, where the plaintiff may be unable to present direct evidence of an employer's actual motive, the plaintiff cannot survive summary judgment with "unsupported allegations and speculations," but rather must "point to specific facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting testimony—giving rise to an inference of discriminatory animus . . . ."); *see also Taylor*, 880 F.2d at 1045 ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").  There are simply no facts offered by Plaintiff giving rise to an inference that Plaintiff was fired by Ms. Tobogacz because Plaintiff had complained to Ms. Wilson about harassment performed by Mr. Guiliani.

Moreover, Plaintiff has failed to present any evidence or argument that Defendant's reasons for transferring or firing her were pretextual.  In its motion, Defendant asserts that Plaintiff was transferred to a different restaurant based on Plaintiff's request for such a transfer.

---

[2] Defendant argues that Plaintiff's transfer to another store cannot be an adverse employment action because Plaintiff's transfer was conducted by Ms. Wilson at Plaintiff's request. (MSJ 5:25–6:3, ECF No. 92).  Plaintiff admits that she requested the transfer but contends that it was to a store that was inconvenient to her, which made the transfer an adverse action. (Resp. at 7, ECF No. 95).  Even accepting Plaintiff's argument that the transfer was an adverse employment action, however, Plaintiff offers no evidence—nor does she even appear to argue—that there is a causal connection between her reporting harassment and her transfer to an inconvenient location.

(MSJ 7:7–8:4, ECF No. 92). It supports this argument with an affidavit from Ms. Wilson stating that Plaintiff's transfer was made at Plaintiff's request and that she transferred her to the second store after making inquiries into what stores would be able to take Plaintiff at her current position. (Wilson Decl. ¶¶ 4–6, ECF No. 92-1). Furthermore, Defendant argues that Plaintiff's employment was terminated because she started showing up late for shifts and then failed to show up to work altogether, so Defendant determined that Plaintiff had resigned. (MSJ at 7 n.4, ECF No. 92); (Tobogacz Decl. ¶ 5, ECF No. 92-1) (stating that after less than a month of her transfer Plaintiff failed to show up for her shifts without explanation); (HR Director Decl. ¶ 4, ECF No. 92-1) (stating that the reason listed for Plaintiff's separation in Defendant's employment records is "Voluntary Termination"). Therefore, Defendant has satisfied its burden in articulating a legitimate reasons for Plaintiff's transfer and termination.

In contrast, Plaintiff literally offers no argument that Defendant's reasons for transferring her or terminating her were pretexts. *See* (Resp. at 8, ECF No. 95) (under the heading "Plaintiff can establish unlawful pretext for adverse employment action as stated before" is a blank space followed by the next heading). Furthermore, Plaintiff admits both that she requested a transfer and that she was late to at least one shift at the second store. *See* (NERC Charge at 16, ECF No. 95); (Pl's Depo. 95:9–25, Ex. 1 to MSJ, ECF No. 92-1). The only evidentiary support that Plaintiff offers for her claim of pretext is one statement in her NERC Charge that "the reason for [her] layoff was pretext." (NERC Charge at 16, ECF No. 95). This lone conclusory statement is insufficient to show that a discriminatory reason more likely motivated Defendant or that Defendant's proffered explanations are unworthy of credence. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

/ / /

/ / /

### C. Sexual Harassment Claim

#### 1. Prima Facie Showing of Sexual Harassment

"To make a prima facie case of a hostile work environment, a person must show 'that: (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). Furthermore, "[a]n employer may be vicariously liable under a hostile environment theory when the harassment is perpetrated by a supervisor 'with immediate (or successively higher) authority over the employee.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

Mr. Guiliani's alleged conduct clearly satisfies the first two prongs of the test. According to Plaintiff's sworn statement, Mr. Guiliani made numerous disrespectful, sexually offense, and unwelcome comments to his female employees—including Plaintiff—and would frequently discuss their "behinds and vaginal areas." (NERC Charge at 15, ECF No. 95). Defendant does not even contend that Plaintiff fails to meet the first two elements for her harassment claim. Instead, Defendant's argument for summary judgment turns on whether this behavior was sufficiently extreme to amount to a change in the terms and conditions of employment and create an abusive working environment. (MSJ 8:5–9:3, ECF No. 92).

Courts determine whether an environment is sufficiently abusive by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787–88 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). Defendant relies on one case, *Kortan v. California Youth Authority*, for its position that calling subordinate female

employees "Mexican Pigs" and "bitches" and discussing their private body parts is not sufficiently severe behavior to give rise to a sexual harassment claim. Defendant's reliance on this case, however, is misplaced. In *Kortan*, the Ninth Circuit found that a supervisor's referring to a female employee as a "castrating bitch" or "Madonna" was not sufficiently severe for a sexual harassment claim. 217 F.3d 1104, 1110–11 (9th Cir. 2000). However, the Ninth Circuit based this finding on the fact that the supervisor made these comments primarily "in a flurry" on one occasion and they were made about another employee, not Plaintiff. *Id.* Furthermore, the supervisor in *Kortan* "never directed a sexual insult at Plaintiff," though he had referred to her as "Rapunzel" and "Medea." *Id.* Therefore, while his comments were offensive, they were not sufficiently so to give rise to a sexual harassment claim. *Id.* at 1111.

    Here, Plaintiff alleges Mr. Guiliani made disrespectful and sexually offense comments to Plaintiff and other female employees on multiple occasions. (NERC Charge at 15, ECF No. 95). Moreover, in addition to calling female employees insulting names, Mr. Guiliani is also alleged to have discussed the female employees' private body parts in their presence. (*Id.*). Unlike the alleged actions in *Kortan*, these allegations at least create a genuine issue of material fact concerning whether Mr. Guiliani's conduct was sufficiently severe to constitute an abusive work environment. *See Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 870 (9th Cir. 2001) (finding that defendant created a hostile work environment where a male employee of a restaurant was subjected to constant insults, name-calling, vulgarities, and taunts of "faggot" and "fucking female whore" by male co-workers and supervisors at least once a week and often several times a day); *Marconi v. Eldorado Resorts, LLC*, 234 F.3d 1277 (9th Cir. 2000) (finding a genuine issue of material fact that defendant created a hostile work environment where Plaintiff's supervisor made sexual remarks to Plaintiff, about her to co-workers, and about patrons in her presence, and where the supervisor leered at Plaintiff, taunted her, and stood too close to her as she tried to do her job); *Draper v. Coeur Rochester, Inc.*, 147

F.3d 1104, 1109 (9th Cir. 1998) (finding that defendant created a hostile work environment where the plaintiff's supervisor made repeated sexual remarks about the plaintiff over a two-year period, calling her "gorgeous" and "beautiful" rather than her name, telling her about his sexual fantasies and his desire to have sex with her, commenting on her "ass," and asking over a loudspeaker if she needed help changing clothes).  Accordingly, Plaintiff has successfully shown a *prima facie* case for sexual harassment.

**2. Reasonable Care Affirmative Defense**

Even if a plaintiff has made a *prima facie* showing of sexual harassment, an employer is still entitled to summary judgment if it can show by a preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer." *Id.*  "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

First, the Court finds that the alleged retaliatory actions taken by Defendant in transferring and terminating Plaintiff do not bar Defendant from asserting the reasonable care defense.  As detailed above, Defendant has provided legitimate, non-retaliatory reasons for both the transfer and the termination, and Plaintiff has failed to present any evidence showing that these reasons were pretexts or that they were related to her reporting of Mr. Guiliani's alleged harassment. *See infra* 6:8–9:2.  Therefore, Plaintiff's transfer and termination are not tangible employment actions that culminated from a supervisor's harassment that would bar Defendant's affirmative defense. *See Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1185 (9th Cir. 2005) *amended on denial of reh'g*, 436 F.3d 1050 (9th Cir. 2006) ("CBS has proffered legitimate, non-retaliatory reasons for the adverse performance memoranda . . . .  For this

reason, even if we consider the memoranda as tangible employment actions[,] . . . they do not bar CBS from asserting the *Ellerth/Faragher* defense."); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 959 (9th Cir. 2004) ("[E]ven if a tangible employment action occurred, an employer may still assert the affirmative defense if the tangible employment action was unrelated to any harassment or complaint thereof.") (internal quotations omitted); *Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1180 (9th Cir. 2001) ("Kohler cannot connect any of the alleged employment actions she experienced to her rejection of [her supervisor]'s advances. Therefore, Kohler has failed to demonstrate a disputed factual issue as to whether she suffered a tangible employment action.").

Regarding the first element of the reasonable care defense, an employer may satisfy its burden with sufficient proof that it "promulgated an anti-harassment policy with complaint procedure." *Ellerth*, 524 U.S. at 765; *see also Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1177–78 (2002) (finding a "promulgated a written policy which defined prohibited behavior, identified contact personnel, and established procedures to investigate and resolve any claims" sufficient for an employer to satisfy the first element of a reasonable care defense). Here, Defendant has presented evidence that it promulgated a written anti-harassment policy and complaint procedure, (Employee Handbook at 7–8, Ex. 3 to MSJ, ECF No. 92-1), and Plaintiff has repeatedly admitted receiving a copy of the policy, (Resp. at 8, ECF No. 95); (Pl's Depo. 77:21–78:17, Ex. 1 to MSJ, ECF No. 92-1). Therefore, Defendant has satisfied the first element of its defense.

Regarding the second element, a demonstration of a plaintiff's "unreasonable failure to use any complaint procedure provided by the employer . . . will normally suffice to satisfy the employer's burden under the second element of the defense." *Ellerth*, 524 U.S. at 765. Under the anti-harassment policy and complaint procedure promulgated by Defendant, employees were to report harassment by "immediately notify[ing] the Human Resource Department and/or

Area Director." (Employee Handbook at 8, Ex. 3 to MSJ, ECF No. 92-1).  Defendant asserts that it has established the second element of its defense by offering the affidavit of Ms. Wilson, the Area Director, in which she states that Plaintiff "did not, at any time during her employment with [Defendant], tell [her] that Mr. Guiliani made inappropriate comments, or engage in inappropriate conduct, that was sexual in nature." (Wilson Decl. ¶ 7, ECF No. 92-1).  However, this testimony is in direct contradiction with Plaintiff's sworn statement that Ms. Wilson "witnessed the way [Mr. Guiliani] treated me and the other female employees[, and] I told her that [Mr. Guiliani] totally disrespects the females[] in the store." (NERC Charge at 16, ECF No. 95).  Therefore, there is a genuine issue of material fact concerning whether Plaintiff used the complaint procedure provided by Defendant.  Accordingly, Defendant has failed to show it is entitled to summary judgment on Plaintiff's sexual harassment claim.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 92) is **GRANTED in part and DENIED in part**.  Defendant is granted summary judgment on Plaintiff's retaliation claim and denied summary judgment on Plaintiff's sexual harassment claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss Allegations (ECF No. 96) is **DENIED**.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 9th day of March, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge